UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUSSELL HUBBLE, as Personal Representative
of the ESTATE OF JENNIFER LYNN MYERS,
Deceased,

    Plaintiff,    Case No. 16-cv-13504

v.    Paul D. Borman
    United States District Judge

    David R. Grand
COUNTY OF MACOMB, et al.,    United States Magistrate Judge

    Defendants.
_____/

AMENDED[1] OPINION AND ORDER (1) OVERRULING DEFENDANTS'
OBJECTION TO MAGISTRATE JUDGE GRAND'S AUGUST 23, 2017
ORDER; AND (2) ORDERING PRODUCTION OF THE CARE TEAM
AND MORTALITY REVIEW DOCUMENTS

  This civil rights action is brought under 42 U.S.C. § 1983 by Russell Hubble ("Hubble"), as Personal Representative of the Estate of Jennifer Lynn Myers ("Myers"), who died on July 7, 2013, while incarcerated at the Macomb County Jail in Mt. Clemens, Michigan serving a thirty (30) day sentence on an outstanding bench warrant. Plaintiff sues (1) Macomb County, and Sheriff Anthony Wickersham in his

---

[1] The only change to this Order appears at page 9, correcting the reference to the briefs filed in *Loyd* to "Defendants'" briefs.

1

individual and official capacities, along with several individual Macomb County jail personnel, some of whom are named and some of whom are John/Jane Does pending discovery of their identities (collectively "the Macomb County Defendants"); and (2) Correct Care Solutions, LLC ("CCS"), the entity providing managed healthcare, medical care, and/or mental health care to inmates at the Macomb County Jail, along with several individual CCS medical providers (collectively "the CCS Defendants"), some of whom are named and some of whom are John/Jane Does pending discovery of their identities. Plaintiff claims that Defendants were deliberately indifferent to Myers' medical needs, and that the Defendants had in place official customs, policies, and practices for screening and managing the care of individuals suffering from serious medical conditions that were constitutionally deficient. The Complaint alleges three separate Counts under 42 U.S.C. § 1983 and includes no state law claims.

**I.  BACKGROUND**

On July 13, 2017, Hubble filed a motion to compel the County and CCS Defendants to produce certain documents, including Mortality Review and Care Team Meeting Records kept by the CCS Defendants. (ECF No. 28, Motion to Compel.) The CCS Defendants opposed production of the Mortality Review and Care Team Meeting Records on the grounds that they were protected by Michigan's Peer Review Privilege, Mich. Comp. Laws § 333.21515. In an August 23, 2017 Order, Magistrate

Judge David Grand ruled that Michigan's peer review privilege does not apply in this § 1983 action, and ordered the CCS Defendants to produce the Mortality Review and Care Team Meeting Records. (ECF No. 39, 8/23/17 Order.) The CCS Defendants now object to the Magistrate Judge's 8/23/17 Order requiring production of Mortality Review and Care Team Reports. (ECF No. 40, Objection.) Plaintiff has filed a Response to the Objections. (ECF No. 53.) For the reasons that follow, the Court concludes that the Magistrate Judge's Order is neither clearly erroneous nor contrary to law and therefore OVERRULES the Objections and ORDERS CCS to produce the requested documents within fourteen (14) days of the date of this Opinion and Order.

## II. STANDARD OF REVIEW

28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a) both provide that a district judge must modify or set aside any portion of a magistrate judge's non-dispositive pretrial order found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The United States Supreme Court and the Sixth Circuit Court of Appeals have stated that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (explaining the clearly erroneous standard under Rule 52(a)); *Hagaman v. Comm'r of Internal*

*Revenue*, 958 F.2d 684, 690 (6th Cir. 1992) (quoting *U.S. Gypsum Co.*). *See also United States v. Mandycz*, 200 F.R.D. 353, 356 (E.D. Mich. 2001) (explaining the standard under Rule 72(a)).

This standard does not empower a reviewing court to reverse the Magistrate Judge's finding because it would have decided the matter differently. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (interpreting the clearly erroneous standard in Rule 52(a)). The Sixth Circuit has noted that: "[t]he question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw. Rather, the test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

"The 'clearly erroneous' standard applies only to the magistrate judge's factual findings; his legal conclusions are reviewed under the plenary 'contrary to law' standard. . . . Therefore, [the reviewing court] must exercise independent judgment with respect to the magistrate judge's conclusions of law." *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich.1995) (citing *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992)). "'An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Mattox v. Edelman*,

No. 12-13762, 2014 WL 4829583, at *2 (E.D. Mich. Sept. 29, 2014) (quoting *Ford Motor Co. v. United States,* No. 08–12960, 2009 WL 2922875, at *1 (E.D. Mich. Sept. 9, 2009)).

## III. ANALYSIS

CCS contends in its Objection that Magistrate Judge Grand committed legal error in failing to conclude that the Sixth Circuit's decision in *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580 (6th Cir. 2014), is controlling precedent here and requires a finding that "Michigan's peer review privilege applies in the context of a § 1983 claim for deliberate indifference resulting in death." (Objs. 1.) The Court finds that *Loyd* is not controlling on the issue of whether Michigan's peer review privilege applies in the context of Plaintiff's § 1983 claims and affirms Magistrate Judge Grand's ruling that Michigan's peer review privilege is inapplicable in this case, and does not shield production of the Mortality Review and Care Team Reports.

Plaintiff alleges three separate Counts in this civil rights action, each claim arising under a federal statute, 42 U.S.C. § 1983. Where, as here, federal law supplies the rule of decision "[t]he common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless . . . the United States Constitution[,] a federal statute[,] or rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 501. " Questions of privilege are to be determined

by federal common law in federal question cases. Fed. R. Evid. 501." *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998). "Because this is a prisoner civil rights case brought under § 1983, federal law supplies the rule of decision, and Rule 501 applies." *Grabow v. County of Macomb*, No. 12-cv-10105, 2013 WL 3354505, at *5 (E.D. Mich. July 3, 2013).

The Supreme Court has recognized that Rule 501 "authorizes federal courts to define new privileges," but cautions that any such undertaking must "start with the fundamental maxim that the public . . . has a right to every man's evidence." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (internal quotation marks and citations omitted) (alteration in original). "Exceptions from the general rule disfavoring testimonial privileges may be justified, however, by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* at 9 (internal quotation marks and citations omitted).

Federal courts have nearly uniformly declined to create a federal peer review privilege. *See Grabow*, 2013 WL 3354505, at *6 ("The overwhelming majority of federal courts agree that there is not a federal common law peer review privilege."); *Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1206 (M.D. Ala. 2016) ("[N]early every United States district court that has addressed the issue in the context of section 1983 litigation brought on behalf of jail or prison inmates has rejected the assertion of

6

privilege."); *United States v. Jackson Madison County Gen'l Hosp.*, No. 12-cv-2226, 2012 WL 12899055, at *3 (W.D. Tenn. Oct. 16, 2012) ("The Respondent concedes that neither the United States Supreme Court nor the Sixth Circuit has recognized a federal peer review privilege. District courts in this circuit have declined to find the existence of such a privilege under federal common law, as have a vast number of other federal courts."); *Jenkins v. DeKalb County, Georgia*, 242 F.R.D. 652, 659 (N.D. Ga. 2007) ("It appears that every United States Court of Appeals that has addressed the issue of whether there is a federal medical peer review privilege has rejected the claim. . . . Furthermore, nearly every United States district court that has addressed the issue in the context of section 1983 litigation brought on behalf of jail or prison inmates has rejected the assertion of privilege.") (collecting cases); *Zamorano v. Wayne State Univ.*, No. 07-cv-12943, 2008 WL 2067005, at *5 (E.D. Mich. May 15, 2008) ("Notably, every federal court of appeals that has addressed the issue for purposes of federal common law has determined that there is no "federal" peer review privilege.") (Citing *Jenkins*, 242 F.R.D. at 659). As the district court noted in *Jenkins*:

> There are unique considerations at play in a post-death investigation ordered by a county jail that dramatically weaken the case for recognizing the privilege. A review of a deceased inmate is not the straightforward evaluation of medical care that occurs in the civilian context. The generation of post-death reports, including the one at issue in this case, may include details such as when jail officials notified

7

> medical officials of a particular problem, and whether there was a reason for non-medical officials to have monitored a situation more closely. The report may verify the fact that a jail official failed to notify medical personnel. Not only is this type of information "nonmedical," but it is also may shed light, or at least raise an inference, of jail customs or policies.

242 F.R.D. at 660.

Despite the heft of case law declining to create a federal peer review privilege, and despite the rule of law requiring this Court to apply federal privilege law in this federal question case, CCS argues in its Objection that this Court is nonetheless bound to apply Michigan's peer review privilege here because *Loyd* has already determined that Michigan's peer review privilege "applie[s] in all sorts of federal lawsuits . . . ." (Objs. at 4.) CCS misreads *Loyd*. As Magistrate Judge Grand correctly observed, "the *Loyd* court never had a reason to analyze (and did not analyze) the arguments in favor of, or against, applying a state privilege to a federal claim . . . [and] certainly did not hold the Michigan's peer review privilege applies to any and all 'claims arising out of federal law.'" (8/23/17 Order at 6.) Indeed, CCS concedes as much but argues that this "holding" was implicit in *Loyd* because "[t]he Sixth Circuit could not reach the ultimate holding in *Loyd* (that the privilege protected the report at issue) without first affirmatively determining that the privilege applied in federal litigation . . . [leaving] no doubt that Michigan's peer-review privilege applies in all sorts of federal lawsuits, including this one." (Objs. at 4.) But such a holding is not "implicit" in

*Loyd* and in fact a review of the briefing in *Loyd*, in both the District Court and the Sixth Circuit, reveals that the parties expressly proceeded under the assumption that the applicability of Michigan's peer review privilege was only being determined with respect to plaintiff's state law claim for intentional infliction of emotional distress. In Defendants' briefs in both the District Court and in the Court of Appeals, Defendants premised their argument with the statement that "[p]ursuant to Federal Rule of Evidence 501, the state law of privileges applies to evidence relevant to establishing an element of any claim or defense based on state law. In this case, the PEERS report is only relevant, if at all, to Plaintiff's IIED or IICR claims. The PEERS report has no bearing on Plaintiff's discrimination claims . . . ." (ECF No. 22 PgID 195, Dist. Ct. Case No. 12-cv-12567; ECF No. 33, Ct. of Appeals Case No. 13-2335 PgID 69.) Defendants in *Loyd* never raised the issue of the applicability of Michigan's peer review privilege to a federal claim in general, or specifically to one asserted under § 1983. This certainly explains why neither the District Court nor the Sixth Circuit discussed the issue that is presented here and dispels any notion that *Loyd* stands for the broad proposition urged by CCS here. It is clear that the Sixth Circuit in *Loyd* accepted this premise and never reached or was called upon to consider the issue of whether Michigan's peer review privilege would apply to a federal statutory claim, or specifically to a claim under § 1983. Regardless of whether

it was appropriate for the courts in *Loyd* to adopt this premise, it is clear that they did and that the sole issue (as relevant here) briefed and decided in *Loyd*, as Magistrate Judge Grand determined, was whether Michigan's peer review privilege (which the parties and the courts assumed applied only to plaintiff's state law IIED claim) applied to reports involving the actions of a hospital security guard, as opposed to a health care worker, in the context of a purely state law claim. The "implicit holding" that CCS seeks to glean from *Loyd* simply is not there. Notably, apart from one Western District of Michigan opinion that the Court finds unpersuasive,[2] the Court's research reveals that *Loyd* has never been cited for the broad proposition that Michigan's peer review privilege applies generally to federal claims brought in federal court. Not only is *Loyd* not "binding precedent" as CCS suggests, it is not even persuasive authority on the important issue presented here – an issue that has been decided contrary to CCS's proffered resolution by nearly every federal court in the country that has confronted the issue.

None of the out-of-district cases cited by CCS in its Objection persuade the

---

[2] The Court is simply not persuaded by Magistrate Judge Kent's conclusion in *Boykin v. Allen*, No. 15-cv-119, ECF No. 151 (W.D. Mich. Dec. 8, 2016), that the court was bound by *Loyd* to apply Michigan's peer review privilege in a somewhat analogous § 1983 wrongful death case. The short opinion in *Boykin* gives no indication that the court there considered any of the important distinctions between *Loyd* and the instant case discussed at length by Magistrate Judge Grand in his 8/23/17 Order and by this Court here in affirming that Order.

10

Court otherwise. In *Nelson v. Green*, No. 06-cv-70, 2014 WL 2695535, at *2 (W.D. Va. June 12, 2014), the court explained, citing Fed. R. Evid. 501, that it would apply Virginia's peer review privilege only "[b]ecause the remaining claim in this case is a state law claim before the Court under pendent jurisdiction, Virginia law governs the determination of whether the documents at issue are protected from production by a claim of privilege." *Cornejo v. Mercy Hospital and Medical Center*, No. 12-cv-1675, 2014 WL 4817806 (N.D. Ill. Sept. 15, 2014), involved a personal injury/medical malpractice claim and the court applied an Illinois peer review privilege without analyzing whether or not the privilege should be applied in a federal proceeding. In the third case, *Elkharwily, M.D. v. Mayo Holding Co.*, No. 12-cv-3062, 2014 WL 3573674 (D. Minn. July 21, 2014), the court premised its discussion of the application of the peer review privilege with the statement that "[w]here, as here, a plaintiff alleges claims under both federal and state law, it is within the court's discretion to apply the state peer review privilege statute." *Id*. at *3. But such discretion, which apparently authorized the court in *Elkharwily* to apply the privilege there, was seemingly foreclosed by the Sixth Circuit in *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) ("Since the instant case is a federal question case by virtue of the appellant's section 1983 claim, we hold that the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege."). *See also*

*Zamorano*, 2008 WL 2067005, at *4 ("[T]he Sixth Circuit applies the federal law of privilege to cases where there are both state and federal claims and where the court's jurisdiction is based on a federal question."). In any event, there are no pendent state law claims in this action.

Finally, the Court finds unpersuasive and disagrees with Judge Richard Enslen's decision to apply the peer review privilege in *Hadix v. Caruso*, No. 92-cv-110, 2006 WL 2925270 (W.D. Mich. Oct. 6, 2006), a decision that has been cited only to be disregarded by subsequent courts confronted with this issue. The Court is persuaded by, and elects to follow, the reasoning and conclusion reached by Judge Avern Cohn in *Grabow*, *supra*, and adopted by the vast majority of federal courts that have squarely addressed this issue and have declined to apply a peer review privilege in the context of a § 1983 claim.

Finally, the Court finds no basis for certification of this issue to the Sixth Circuit. The issue presented does not involve a controlling question of law about which there is substantial ground for difference of opinion and immediate appeal will not materially advance the ultimate termination of the litigation. Accordingly, the Court DENIES CCS's request to certify the issue for immediate appeal to the Sixth Circuit.

**IV.  CONCLUSION**

For the foregoing reasons, the Court OVERRULES CCS's Objection, AFFIRMS the Magistrate Judge's Order, and ORDERS CCS to produce the requested documents within fourteen days of the date of the Opinion and Order.

IT IS SO ORDERED.

s/Paul D. Borman<br>
Paul D. Borman<br>
United States District Judge

Dated: December 1, 2017

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 1, 2017.

s/Deborah Tofil<br>
Case Manager