UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUSSELL HUBBLE, as Personal
Representative of the Estate of
JENNIFER LYNN MEYERS,
Deceased,                                          Case No. 2:16-cv-13504

        Plaintiff,                          Paul D. Borman
v.                                                 United States District Judge

                                                   David R. Grand
COUNTY OF MACOMB,                                  United States Magistrate Judge
*et al*,

        Defendants.
_____/

## OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM ELICITING EXPERT TESTIMONY FROM L.J. DRAGOVIC, M.D. (ECF NO. 81) and (2) DENYING PLAINTIFF'S MOTION TO FILE A SUR-REBUTTAL (ECF NO. 95)

This action involves the tragic death of Jennifer Meyers, a 37-year-old woman

who died as a result of acute sepsis while serving a thirty-day sentence on an

outstanding bench warrant at the Macomb County Jail. Her Estate has filed suit

against Macomb County, the Macomb County Sheriff Anthony Wickersham

(collectively "the Macomb County Defendants"), Correct Care Solutions, LLC

("CCS"), the health care provider for the jail, and several CCS staff.[1] The Complaint alleges that the Defendants caused Ms. Meyers's death by being deliberately indifferent to her medical needs and thus violating her rights under the Eighth Amendment to be free from cruel and unusual punishment.

The CCS Defendants now move to preclude Plaintiff from eliciting expert testimony from Dr. Dragovic, M.D., regarding alleged constitutional violations or causation. (ECF No. 81.) Plaintiff has filed a Response (ECF No. 89), CCS has filed a Reply (ECF No. 92), following which Plaintiff filed a Motion to Allow Plaintiff to File a Sur-Rebuttal Response to CCS Defendants' Reply (ECF No. 95), to which the CCS Defendants have filed a Response (ECF No. 98). The Court held a hearing on the motion on January 24, 2019. For the reasons that follow, the Court DENIES the motion to file a sur-rebuttal and GRANTS the motion to preclude Dr. Dragovic's opinions and testimony.

## I. BACKGROUND

The background facts of this action are set forth in great detail in an Opinion and Order issued this same day resolving the Defendants' motions for summary judgment. Facts that are specifically relevant to the *Daubert* issues raised here will

---

[1] Although Plaintiff's Complaint also names "Deputy John/Jane Does," the Estate has not named any deputies or corrections officers in this litigation.

be mentioned in the analysis section.

## II.   LEGAL STANDARD

"Admissibility of expert testimony is governed by Federal Rule of Evidence 702 and informed by the seminal case applying Rule 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *In re Southeastern Milk Antitrust Litigation*, 739 F.3d 262, 276 (6th Cir. 2014).   Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"[T]he rules of evidence - especially Rule 702 - do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.   The trial court's "gatekeeping" task with respect to expert testimony applies not just to scientific evidence, as was at issue in *Daubert*, but to all types of specialized knowledge

3

presented through an expert witness. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999). ""[T]he relevant reliability concern may focus upon personal knowledge or experience . . . [as] there are many different kinds of experts, and many different kinds of expertise." *Id.* at 150. The Court must analyze separately the proposed expert's qualifications, reliability and helpfulness.

The Sixth Circuit has noted that absolute certainty is not required of an expert but that sheer speculation, regardless of the qualifications of the speculator, lacks sufficient reliability:

> Rule 702, we recognize, does not require anything approaching absolute certainty. *See Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line.

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671-72 (6th Cir. 2010).

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008). "As gatekeeper, the trial court only determines the admissibility of expert evidence; the jury determines its weight. The court's focus is 'solely on principles and methodology, not on the conclusions that they generate.'" *United States v. Stafford*, 721 F.3d 380, 393-

4

94 (6th Cir. 2013) (quoting *Daubert*, 509 U.S. at 595) (alterations in original). "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530. Testimony based on allegedly erroneous facts will generally be permitted "when there is some support for those facts in the record." *Id.*

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report to contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). An expert report fails to comply with subsection (2)(B)(i) if it provides only "cursory support" for the opinions expressed. *R.D. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010). "'[A]n expert opinion must 'set forth facts' and, in doing so, outline a line of reasoning arising from

a logical foundation.'" *Id.* (quoting *Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 657 (6th Cir. 2005)). "Under Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *Id.* (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir. 1998)). "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Olmstead*, 606 F.3d at 271 (internal quotation marks and citations omitted).

Supplementation of an expert report is required under Fed. R. Civ. P. 26(e)(1), (2), to provide "additions or changes" to the information contained either in an expert's report filed under Rule 26(a)(2)(B) or in an expert's deposition. Fed. R. Civ. P. 26(e)(1), (2). The "reasons for supplementation under Rule 26(e)(1)" are "narrow," and "[i]t is not mere 'supplementation' when a party submits a manifestly incomplete report lacking analysis or a supporting rationale, waits for the summary judgment deadline to pass, and then submits a fuller report that contains actual reasoning." *Eiben v. Gorilla Ladder Co.*, No. 11-10298, 2013 WL 1721677, at *5-6 (E.D. Mich. April 22, 2013) (Rosen, J.) (internal quotation marks and citation omitted). "Rule 26(e) does not give the producing party a license to disregard discovery deadlines and

to offer new opinions under the guise of the supplement label," and the information sought to be provided by supplementation must be information acquired after the original report was issued and the proposed supplementation must "be a genuine attempt to remedy previously 'incomplete or incorrect' information." *Id.* at *5 (internal quotation marks and citation omitted). Where the parties have agreed to a deadline for filing expert reports, and as here have agreed to a deadline for filing motions challenging experts, Rule 26(e) supplementation must occur prior to that agreed upon deadline. *Id.* at *6. *See also State Farm Mutual Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2014 WL 10294798, at *3 (E.D. Mich. June 16, 2014 (Grand, MJ) ("while a party has a duty under Rule 26 to supplement an expert report, the time for doing so remains that which is articulated in the scheduling order for the tendering of such reports, unless the Court designates otherwise") (citing *Eiben*, 2013 WL 1721677, at *4).

## III.   ANALYSIS

Plaintiff's proffered expert forensic pathologist, Dr. L.J. Dragovic, has been the Chief Forensic Pathologist/Chief Medical Examiner for Oakland County since 1991. (ECF No. 89-5, Curriculum Vitae of Dr. Ljubisa Jovan Dragovic, M.D., F.C.A.P., F.A.A.F.S, PgID 2525.)  Defendants do not appear to question that Dr. Dragovic is qualified as an expert by knowledge, skill, experience, training, and education, to

offer an opinion on topics related to forensic pathology. However, they challenge Dr. Dragovic's "opinion" offered in this case as being nothing but "generalities and maxims" and therefore subject to exclusion under Fed. R. Evid. 702. (Defs.' *Daubert* Mot. 4, PgID 2019.) Specifically, Defendants challenge the admissibility of Dr. Dragovic's proffered testimony regarding: (1) "alleged constitutional rights," (2) jail policies and procedures, and (3) causation, i.e. Dr. Dragovic's opinion that Ms. Meyers's infectious disease, to which all agree she ultimately succumbed, was "obviously developing over a period of days/weeks, during her incarceration." (Defs.' *Daubert* Mot. 4-6, PgID 2019-2021.) The entirety of Dr. Dragovic's "analysis and opinion" in his initial Report, is as follows:

> The critical issue here is the ability of the authorities responsible for the custody and care of inmates to exercise due diligence to identify in a timely fashion something that is not right, something unusual, or something that is extra-ordinary in the scope of their professional functioning and to react appropriately to such situations, based on their standard operating procedures.
>
> Further questions remain regarding the timeliness of the response of the jail medical services and adequacy of their assessment of Ms. Meyers's condition at the time. Any success of medical intervention is based on the dictum of the *window of opportunity*, which is controlled by the variability of the natural biologic progression of the infectious disease Ms. Meyers was obviously developing over a period of days/weeks, during her incarceration.
>
> Common sense indicates that there cannot be a discussion of therapeutic intervention for an individual in custody, unless the custodians convey

the information about the change in the condition of the inmate in their care/custody to the medical authorities.

As outlined above, the chances for a therapeutic success are directly dependent on the timeliness of establishing the diagnosis.

(Pl.'s Resp. to Defs.' *Daubert* Mot. Ex. 3, Feb. 9, 2018 Report of L.J. Dragovic, M.D. 3, PgID 2521-23) ("Dragovic Report").) Dr. Dragovic also lists the materials he reviewed in reaching his opinions, including the CCS medical records pertaining to Ms. Meyers's care, the written witness statements of Ms. Meyers's fellow inmates, the St. John hospital medical records pertaining to Ms. Meyers, the medical examiner's autopsy report and certificate of death, digital images of Ms. Meyers's remains obtained at the time of the autopsy, the autopsy microscopic slides, the Plaintiff's Complaint, and the reports of Defendants' experts, Nurse Wild and Drs. Stoltz, Baden, and Feltoon. (*Id.* at PgID 2521.) Dr. Dragovic does not cite to any publications, medical literature or data, or scholarly works as support for his "opinions."

First of all, in response to Defendants' motion, Plaintiff makes clear that Dr. Dragovic has no intention of offering an opinion on the constitutionality of any of CCS's conduct in this case. Nor could he, as experts are precluded from offering opinions that embrace the ultimate legal issues to be decided by the trier of fact. *See Killon v. KeHE Distributors, LLC*, 761 F.3d 574, 593 (6th Cir. 2014) (holding that

district court did not abuse its discretion in excluding an expert's report that contained "impermissible legal conclusions") (citing *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (holding that under Fed. R. Evid. 704(a), "the issue embraced must be a factual one," and ruling that the expert was not permitted to opine that the city was "deliberately indifferent to the welfare of its citizens")); *Franklin Park Lincoln-Mercury, Inc. v. Ford Motor Co.*, 631 F. App'x 271, 275 (6th Cir. 2015) ("'Simply having experts restate general facts and announce legal conclusions without any analysis does not create a genuine issue of material fact.'") (quoting *Doe v. Magoffin Cnty. Fiscal Court*, 174 Fed. Appx. 962, 974 (6th Cir. 2006)).

Nor does there seem to be any real argument that Dr. Dragovic, a pathologist, is NOT an expert in jail procedures and cannot opine on jail "standard operating procedures" or the scope of the jail staff's job duties. Thus, in the first paragraph of Dr. Dragovic's Report, he is clearly offering an opinion on matters outside the scope of his forensic pathology expertise and is precluded from offering such testimony. Nor are the generalized concepts that Dr. Dragovic expresses in this first paragraph, for example the importance of the ability to "identify in a timely fashion something that is not right, something unusual, or something extra-ordinary," beyond the comprehension of a lay person, and thus expert testimony on these generally

understood concepts regarding human behavior would not assist the trier of fact. In addition, as discussed *infra*, this "broad and dramatic language without substance or analysis," fails to satisfy the very basic requirements of a Rule 26 expert report. *Brainard v. American Skandia Life Assurance Co.*, 432 F.3d 655, 664 (6th Cir. 2005).

Defendants next argue that Dr. Dragovic should not be permitted to offer an opinion on "causation." Although Defendants style their motion as one to exclude an expert opinion under Rule 702, Defendants confusingly began their argument by asserting that "Dr. Dragovic's report does not submit any opinions regarding . . . causation of Plaintiff's decedent's death." (Defs.' *Daubert* Mot. 4, PgID 2019.)[2] Defendants proceed to argue that having failed to issue any opinions on causation, Plaintiff cannot now attempt to supplement Dr. Dragovic's Report to offer an opinion on the cause of Ms. Meyers's death. Based upon the briefing torrent that the Defendants' motion unleashed (discussed *infra*), it appears that this "causation opinion argument" was Defendants' effort to forestall any attempt by Plaintiff to supplement Dr. Dragovic's Report – but in fact it elicited just that response from the

---

[2] Plaintiff's purport to proffer Dr. Dragovic, an expert forensic pathologist, to opine on the cause of Ms. Meyers's death – but the parties are not in disagreement as to the the conclusions of the Medical Examiner, Mary E. Pietrangelo, M.D., as to the diagnosis and ultimate conclusion as to the cause of Ms. Meyers's death. (ECF No. 79, 8/26/13 Report of Diagnosis and Autospsy on Jennifer Meyers, PgID 1989; ECF No. 90-2, Amended Death Certificate PgID 2725.) Thus, it would appear that his testimony also would be cumulative if this is the purpose of proffering his opinion.

Plaintiff, creating a Rule 26 supplementation issue, which is discussed in greater detail *infra*.

Finally, Defendants also seek to exclude as "unreliable" Dr. Dragovic's opinion that Ms. Meyers's infectious disease was "obviously developing over a period of days/weeks, during her incarceration." (Defs.' Mot. 6, PgID 2021.)[3] Defendants argue that Dr. Dragovic, an expert in pathology and not in infectious disease, supports this opinion with insufficient facts or data, and does not cite to any reliable principles or methods to support his statement, nor does he reliably apply those principles to the facts of this case. (*Id.*) Defendants point out that Dr. Dragovic "provides no studies or data for how sepsis appears or how a sepsis grows in order to show how sepsis grew in a woman of similar age, weight, and habits like Jennifer Meyers during June-July 2013." (*Id.*) What became clear at the hearing on this motion is that the key word in this proffered opinion, at least from the Plaintiff's perspective, is the word

---

[3] Plaintiff's and Defendants' experts agree that Ms. Meyers entered the jail with an infection that worsened during her incarceration and resulted in her death. Defendants' experts, including Dr. Stoltz and Dr. Baden, reached the same conclusion in their own reports – that Ms. Meyers's "grave medical condition started before her incarceration and likely from her IV drug abuse and just exacerbated over time," (ECF No. 77-14, Stoltz Report 5, PgID 1952), and that "a spinal epidural abscess is a life-threatening infection that requires immediate diagnosis and treatment." (ECF NO. 89-8, Pl.'s *Daubert* Resp. Ex. 7, July 13, 2017 Report of Michael M. Baden, M.D. 2, PgID 2604). The evidentiary "gap" that Plaintiff apparently seeks to fill with Dr. Dragovic's testimony is the alleged "outward manifestation" or *ever-present obviousness* of Ms. Meyers's alleged symptoms.

"obviously." Plaintiff's real intention in offering Dr. Dragovic is to have him opine to the jury that Ms. Meyers's physical symptoms that allegedly were observed by certain fellow inmates (profuse sweating, immobilizing pain, and gravely foul body odor) would have been constantly present and "obvious" to anyone who came into contact with Ms. Meyers during the period of her incarceration. But, as discussed *infra*, Dr. Dragovic provides no scientific basis whatsoever to support the opinion that someone suffering from the infectious process that ultimately killed Ms. Meyers would absolutely have been consistently exhibiting the symptoms that the inmates say they observed. And as to Ms. Meyers's alleged inability to leave her cell, the CCS nurses certainly would have no way of knowing that Ms. Meyers had not left her cell and that inmates were delivering her meals. As to the other alleged "external manifestations" of the sepsis process that allegedly would have been ever-present and obvious, Dr. Dragovic simply provides no scientific or medical foundation whatsoever, and no reasoning and analysis, to support this opinion.

In response to Defendants' *Daubert* motion related to Dr. Dragovic, Plaintiff argues that if Defendants wanted to know more about Dr. Dragovic's opinions, they should have deposed him. But, as discussed *infra*, the law in the Sixth Circuit is clear that Rule 26 was intended to obviate the need to depose experts and it is not incumbent on the opposing party to depose an expert to find out the substance of what

an expert report lacks. "Under Rule 26(a), a report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Olmstead,* 606 F.3d at 271 (internal quotation marks and citation omitted). Dr. Dragovic's three-paragraph "Report," containing only sweeping generalized pronouncements, fails this basic requirement. Having been alerted by Defendants' motion to the failings of Dr. Dragovic's Report, Plaintiff attempts to bolster his Report with a supplemental Affidavit from Dr. Dragovic in which he discloses that he established his "professional opinion based on [his] medical understanding of the patho-physiology of the infectious disease process (bacterial endocarditis) Ms. Meyers had been developing over a period of many days/weeks." (ECF No. 89-7, Oct. 23, 2018 Affidavit of Ljubisa Jovan Dragovic, MD, ¶ 9, PgID 2578) ("Dragovic Aff."). Dr. Dragovic further explains, in an opinion not stated in his original Report, that Ms. Meyers's "rather fulminant infectious process (acute bacterial endocarditis), without treatment, almost invariably terminates fatally (in sepsis) within a span of time that can vary individually between approximately fourteen (14) days and two (2) months." (*Id.* ¶ 10, PgID 2578.) Dr. Dragovic further states that his review of the fellow inmate witness statements, "that included observations of Ms. Meyers's profuse

14

sweating, her groaning in pain, her being unable to get out of her jail cell bed for days, and reported odors emanating from Ms. Meyers's cell, would all be consistent with the general external manifestation of the infectious disease process she was suffering from." (*Id.* ¶ 12, PgID 2579.) Again, this opinion that the symptoms witnessed by the fellow inmates were "consistent with the general external manifestation of the infectious disease process she was suffering from" (*Id.* at ¶ 12, PgID 2579), was not set forth in his original Report.

In reply to Plaintiff's Response, Defendants attack Dr. Dragovic's "supplemental" Affidavit, and to a certain extent his original Report, under Fed. R. Civ. P. 26(a)(2)(B) and 26(e). The Defendants' challenge is well taken. Although Defendants' motion sought to exclude Dr. Dragovic's Report under Fed. R. Evid. 702, Defendants also could have attacked the Report for failing to comply with the basic requirements of Rule 26(a)(2)(B)(i) that an expert report "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." An expert report (or affidavit) that "employs broad and dramatic language without substance or analysis," and fails to supply any "meaningful analysis or reasoning," is properly excluded as too conclusory to satisfy the requirements of Rule 26(a)(2)(B)(i). *Brainard*, 432 F.3d at 664. "[A]n expert opinion must set forth facts and, in doing so, outline a line of reasoning arising from a logical foundation." *Id.*

(internal quotation marks and citation omitted). "[A]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id*. Dr. Dragovic's Report surely falls into this conclusory category. Dr. Dragovic lists the materials he reviewed in reaching his opinion, but his actual "analysis and opinion" does not refer to *any* evidence or specific facts from the records he reviewed that supply the "logical foundation" for his conclusory opinions. Nor do the Report or Affidavit cite to any scholarly or peer reviewed materials. Dr. Dragovic generalizes about the criticality of "the ability of authorities responsible for the custody and care of inmates to exercise due diligence to identify in [] timely fashion something that is not right, something unusual, or something that is extra-ordinary in the scope of their professional functioning and to react appropriately to such situations, based on their standard operating procedures." (Dragovic Report 2, PgID 2522.) This entire paragraph is nothing but a "broad and dramatic" statement, completely lacking substance or analysis.

The second paragraph of Dr. Dragovic's Report fares no better. In fact, this paragraph begins by opining that "further questions remain regarding the timeliness of the response of the jail medical services and adequacy of their assessment of Ms. Meyers's condition at the time." (*Id.*) This is not an opinion at all – it is quite opposite of an opinion in its admission that "questions remain." This paragraph

continues with the generalized (and content-lacking) pronouncement that any "success of medical intervention is based on the dictum of the window of opportunity, which in [] of itself is controlled by the variability of the natural biologic progression of the infectious disease Ms. Meyers was obviously developing over a period of days/weeks, during her incarceration." Another "broad and dramatic" statement, citing no scientific support, completely lacking any link to the facts of this case, supplying nothing but a "bottom line" observation about the success of a medical intervention being dependent upon the timing of the diagnosis, and "suppl[ying] nothing of value to the judicial process." *Brainard*, 432 F.3d at 664. The ultimate "conclusion" that Ms. Meyers was "obviously developing [this infectious disease] over a period of days/weeks, during her incarceration," is both conclusory and undisputed.

The third paragraph continues in the same unhelpful vein, prefaced by the statement that "common sense indicates" the opinion that Dr. Dragovic is about to give – that there cannot be a discussion of the medical treatment of an inmate unless the jail staff convey information about the inmate's condition to the medical authorities. If common sense indicates this, the jury does not need Dr. Dragovic to opine on it for them. Dr. Dragovic closes out his "analysis and opinion" in the same style – reiterating that "the chances for a therapeutic success are directly dependent

17

on the timeliness of establishing the diagnosis." (Dragovic Report 3, PgID 2523.)

Another "bottom line" dramatic statement, with no scientific support, analysis, or reasoning linking this maxim to the facts of this case, and providing "nothing of value to the judicial process." It is no wonder that Defendants opted not to depose Dr. Dragovic – his Report says nothing about the "how and the why" as applied to this particular case:

> Under Rule 26(a), a "report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir.1998) (citing *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995)). "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.* [Dr. Dragovic's] report plainly failed to clear this hurdle.

*Olmstead*, 606 F.3d at 271. "The whole purpose of Rule 26's expert report requirement is to alleviate a party's need to depose an expert witness prior to trial. To find that the Clinic Defendants' clear failure to tender a proper expert report is harmless solely because the expert could later be deposed would turn the rule on its head and essentially render it a nullity." *Physiomatrix*, 2014 WL 10294798, at *4. As Sixth Circuit Judge Raymond Kethledge observed in his concurrence in *Olmstead*, a "patently noncompliant" expert report must be excluded under Fed. R. Civ. P. 26(a)(2)(B), because "[e]very violation of the Rules has consequences," and "[t]he

time to comply with the Rules is when the district court's scheduling order says to comply, not weeks later when faced a motion for noncompliance." 606 F.3d at 277-78 (Kethledge, J.) (concurring).

Even were the Court to consider it, Dr. Dragovic's supplemental Affidavit does not save his opinions. He observes in the Affidavit, or more accurately agrees with, the Medical Examiner's conclusion that Ms. Meyers died of acute bacterial endocarditis contributed to by acute sepsis. Dr. Dragovic then "expands" on the opinion expressed in his original Report that Ms. Meyers's infectious condition was developing during the time that she was incarcerated (also undisputed). In his Affidavit, Dr. Dragovic states that this infectious process, "without treatment, almost invariably terminates fatally (in sepsis) within a span of time that can vary individually between approximately fourteen (14) days and two (2) months." (Dragovic Aff. ¶ 10, PgID 2578.) He expresses this supplemental "opinion" but cites no foundational scientific basis for this conclusion, relying instead broadly on his education, training, and experience and the report of the Medical Examiner and Dr. Dragovic's own examination of digital images of Ms. Meyers's remains and "microscopic slides" in Ms. Meyers's autopsy file. Dr. Dragovic does not explain how this "evidence" relates to or supports his conclusion that Ms. Meyers's condition, if left untreated, usually results in death within 14 days to two months. Dr. Dragovic

gives no indication at all what it is about those images or those slides or the Medical Examiner's report that leads him to his conclusions. He just lets us know that he reviewed them. There is no "analysis" or "reasoning" in this supplemental statement, only a citation to some record evidence with no discussion of how that evidence supports the proffered opinion or how this opinion relates to the issue of causation in this case.

Dr. Dragovic also states in his "supplemental" Affidavit, based on his review of the inmate witness statements, that Ms. Meyers's profuse sweating, groaning in pain, being unable to leave her cell for days, and the smell emanating from her body, were the "external manifestation of the infectious disease process she was suffering from." (Dragovic Aff. ¶ 12.) Dr. Dragovic does not supply any scientific or medical foundation for this conclusion, and this "opinion" is not found in his original Report.

Like his original Report, Dr. Dragovic's Affidavit lacks the "analysis and reasoning" required of an expert report. Even if there were meaningful substance to Dr. Dragovic's Affidavit, it was prepared in response to a motion to exclude his opinion, and is not permissible "supplementation" under Rule 26:

> Although Fed. R. Civ. P. 26(e) requires a party to "supplement or correct" his disclosure upon information later acquired, "[i]t is not mere 'supplementation' when a party submits a manifestly incomplete report lacking analysis or a supporting rationale, waits for the summary judgment deadline to pass, and then submits a fuller report that contains

actual reasoning." *Ullman v. Auto–Owners Mut. Ins. Co.*, 2007 WL 1057397 at *3 (S.D. Ohio 2007). Rule 26(e) simply does not contemplate supplying wholly missing information such as found here. As the court held in *Allgood v. General Motors Corp.*, 2007 WL 647496 (S.D. Ind. 2007), Rule 26(e) "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label." *Id.* Moreover, given that all of the information upon which [Dr. Dragovic] bases his "supplementation" was available at the time he prepared his original expert report, [Dr. Dragovic's] Affidavit cannot be said to "include information thereafter acquired" or to be a genuine attempt to remedy previously "incomplete or incorrect" information. Fed. R. Civ. P. 26(e)(1).

*Eiben*, at *5. As then Chief Judge Rosen continued in *Eiben*:

> The narrow reasons for permissible supplementation under Rule 26(e)(1) simply do not exist here. This is not a situation in which a party sought to supplement a report to correct a late-in-the-day error or inaccuracy in its reasoning. *See, e.g., Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3 (D.D.C. 2005) (permitting error correction via supplementation). Nor is this a case in which supplementation would serve as a response to an opposing expert's pointing out gaps in [Dr. Dragovic's] chain of reasoning. *See, e.g., Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1332 (10th Cir. 2004). This is not even a case in which supplementation would reflect an expert's changed opinion. *See* Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendments, Subdivision (e) ("changes in the opinions expressed by the expert whether in the report or at a subsequent deposition are subject to a duty of supplemental disclosure under [Rule 26(e)(1) ]").

> By seeking to transform a conclusory report via supplementation, Plaintiff is in effect essentially and impermissibly presenting a new opinion.

*Eiben*, 2013 WL 1721677, at *6.

And here, even that "new opinion" lacks the rigor demanded by Fed. R. Evid.

702 and Rule 26(a)(2)(B)(i). Plaintiff appears to assume that it is sufficient for Dr. Dragovic simply to state generally that he is "very qualified," and that he "applied his medical education, knowledge and experience to the facts contained in [the documents] he reviewed to reach [his] conclusions." (Dragovic Aff. ¶ 7, PgID 2578.) But qualification alone does not satisfy *Daubert* and Rule 26 demands more than this generalized reference to the materials he reviewed. There is no analysis of how those materials provide the foundation for his opinions. But even assuming that his supplemental Affidavit does contain sufficient additional detail to avoid the "conclusory" label, this additional detail (specifically paragraphs 9-12) is not proper supplementation, and could and should have been contained in Dr. Dragovic's original Report, and cannot be supplied at this late stage. Per this Court's Orders, expert reports were due in this case on February 15, 2018, see ECF No. 72, Second Amended Civil Case Management and Scheduling Order), and Dr. Dragovic's Report was timely filed on February 9, 2018. The expert discovery deadline was extended from May 31, 2018, to July 31, 2018, *see* ECF No. 75, Stipulation and Order Amending the Second Amended Case Management Order. Dr. Dragovic had the benefit of reviewing each of the Defendants' experts' reports, as he acknowledges in his Report, before providing his opinions. At no time since the filing of Dr. Dragovic's Report did Plaintiff seek to supplement, correct, or otherwise alter Dr.

22

Dragovic's opinions. Sixth Circuit law makes clear that attempting to do so now, in response to a motion to exclude Dr. Dragovic's Report, is impermissible supplementation under Rule 26.

In response to Defendants' Reply, Plaintiff filed a motion for leave to file a sur-rebuttal, insisting that Defendants are at fault for not taking Dr. Dragovic's deposition and discovering the underlying bases for his opinions. (ECF No. 95, Mot. to File Sur-Rebuttal 3, PgID 3364). Plaintiff argues that Defendants "shifted" arguments in their Reply away from *Daubert* to the issue of expert supplementation – which of course they did because Plaintiff filed a supplemental affidavit in support of their Response! In any event, the case law that Plaintiff seeks to submit addresses the issue of post-deposition affidavit testimony presented at the summary judgment stage to clarify (but not contradict) previous deposition testimony. (*Id.* at 4, PgID 3365) (citing *Aerei, S.R.I. v. PCC Airfoils, L.L.C.*, 448 F.3d 899 (6th Cir. 2006)). Plaintiff submits that those cases teach that if an affidavit does not constitute an attempt to create a sham fact issue, it is admissible on summary judgment. That may be true, but the applicable rule here is Rule 26, not Rule 56, and it is clear in the Sixth Circuit (and universally in fact) that an expert can only supplement a Report under very narrow and well-defined circumstances, none of which is present here, as discussed at length *supra*. The Court DENIES the Plaintiff's motion to file a sur-rebuttal as it proposes

to submit irrelevant law.

## IV.  CONCLUSION

For the foregoing reasons, the CCS Defendants' motion to exclude the expert

testimony and report of Dr. Dragovic (ECF No. 81) is GRANTED and Plaintiff's

motion to file a sur-rebuttal (ECF No. 95) is DENIED.

IT IS SO ORDERED.

Dated:     APR 2 3 2019

Paul D. Borman
United States District Judge